[Civ. No. 7622. Second Appellate District, Division Two.—May 10, 1933.]

VERA C. THOMPSON, Administratrix, etc., et al., Plaintiffs and Respondents, v. A. G. DENTMAN, Appellant; EDWARD L. BOWKER et al., Defendants and Respondents.

[Civ. No. 7657. Second Appellate District, Division Two.—May 10, 1933.]

VERA C. THOMPSON, Administratrix, etc., et al., Plaintiffs and Respondents, v. A. G. DENTMAN, Defendant and Respondent; EDWARD L. BOWKER et al., Appellants.

682

W. I. Gilbert for Appellant Dentman.

Paul Nourse and Forrest A. Betts for Appellants Bowker et al.

Samuel A. Rosenthal for Plaintiffs and Respondents.

STEPHENS, J.—We are in this opinion considering appeals from the verdict and the judgment for damages in the sum of $7,850 and costs in favor of all of the plaintiffs and against all of the defendants. The defendants Bowker join in appealing separately from defendant Dentman, who appeals separately and alone.

The damages were awarded for the death of Veronica Biehl, alleged to have occurred by reason of the negligence of defendants and appellants A. G. Dentman and Edward L. Bowker, in operating their automobiles. The verdict and judgment are also against defendants Walter K. Bowker and Harriet B. Bowker by reason of their statutory liability as the parents of Edward L. Bowker whose operator's license was issued on their application.

The plaintiff Conrad Biehl was the surviving husband, and the plaintiffs Henry Edwin Knechtel, Edna Idella Hilbert and Joseph Wesley Knechtel were the surviving children of the deceased Veronica Biehl.

### General Statement of Facts.

This is another case of two automobiles meeting within the intersection of two thoroughfares. It is more distressing than most others of these distressing cases because the death tragedy overtook the victim as she was walking across the street, innocent of all blame. (Contributory

negligence, though alleged, was stipulated out of the case.) The jury found that both drivers of the two colliding automobiles were negligent. The accident occurred at the intersection of two streets crossing each other at approximately right angles. Bowker, aged nineteen, was driving a Model A Ford touring car northerly. Dentman was driving an Essex coach easterly. An ordinary boulevard stop sign was in place on the east and west street at the corner approached by Dentman. Dentman's left front bumper projection collided with Bowker's left rear fender near the center of the intersection. Bowker's car tipped upon its right wheels, described an arc and its right rear side struck Mrs. Biehl, hurtling her through the air and to the ground. Dentman's car turned to the north and went toward the easterly curb of the north and south street and northerly of the intersection area. There was a two-rail electric railway along the center of the east and west street and Edward L. Bowker, driving the last 100 feet approaching the crossing, did not have a clear and uninterrupted view of the railway for 400 feet in either direction.

■ Without going into details we think there is substantial evidence to support the jury's determination that the negligence of both drivers proximately contributed to the tragedy. It is also true that had the jury found either one of the drivers solely to blame there was substantial evidence to support such a finding.

Both appellants claim there was reversible error in the court's instructions, but before we consider these claims we shall dispose of the other specifications of error.

Defendant Dentman assigns as error the refusal of the court to instruct the jury to return a verdict for him. In view of what we have just said it is clear that we think this specification without merit.

Defendant Dentman assigns as error the refusal of the trial court to grant him a new trial. For reasons that will hereinafter appear obvious we think this motion should have been granted.

■ Defendants Bowker assign as error the court's refusal to permit an impeachment foundation. Mary L. Hull was a witness to the accident and was called as a witness for plaintiffs at the trial. She testified in part as follows:

"I observed the Essex immediately after I heard the crash and looked up. It appeared to me that the Essex was following the Ford. The Ford was swerving to the left. The Essex came in behind the Ford and *went* to the right curb. The Essex followed the Ford. It seems to me the Ford was going this way (indicating on map); the first I saw of the Essex it was going to the right of the Ford, and the Ford was on the two right wheels, going to the left. There was no speed to the Essex from the time I first observed it after the collision and the time it came to a stop." Upon cross-examination the witness was asked if the Essex "shot" behind the Ford and the court sustained the objection that the question was "improper". The cross-examiner then explained that he was seeking to lay a foundation for impeachment, and a record of the witness' testimony at the coroner's inquest as to the cause of the death was produced, from which it appears that the witness testified substantially as above quoted but she had used the word "shot" instead of the word "went" italicized by us for clarity. The court would not permit the laying of foundation for impeachment, apparently for the reason stated in the objection that the testimony at the inquest was the same as that given in the instant hearing. The court was probably right until the purpose of the original cross-examining question was explained. In the light of this explanation and in consideration of the great importance the rate of speed of each car bore to the question of proximate cause of the collision, we think the impeachment questions and procedure should have been allowed. The shade of difference in the word "went" as used in one instance and the word "shot" as used in the other, in description of the same event might have been very important. (Code Civ. Proc., sec. 2052, *People* v. *Bushton*, 80 Cal. 160, at p. 161 [22 Pac. 127, 549], and *Worley* v. *Spreckels Bros.*, 163 Cal. 60, at p. 71 [124 Pac. 697].)

### The Judgment in Favor of All Plaintiffs.

■ All of the defendants (appellants) claim that the verdict and judgment in favor of all plaintiffs jointly are against the law and the evidence. It will be remembered that four plaintiffs joined in instituting and maintaining this action; Conrad Biehl, the husband of Veronica Biehl who was killed, and two sons and one daughter of Conrad and

Veronica Biehl. In the course of trial it was stipulated by all of the parties and accepted by the court that the plaintiffs other than Conrad Biehl, the husband, "are not dependent and were not dependent children at the time of the death of Veronica Biehl . . . None of them are now or were (at death of Veronica Biehl) minors. They are all adult persons, and were not dependent on Mrs. Biehl at the time of her death." The complaint alleges: "That during her lifetime, the deceased, Veronica Biehl was engaged in the manufacture, distribution and sale of 'homemade noodles' to which she gave her personal attention and efforts, and that as a direct result of her said employment and business, she earned approximately fifteen hundred ($1500.00) dollars per year; that in addition to said activities, the deceased, Veronica Biehl, performed household duties as a housewife; and that the plaintiff, Conrad Biehl, was dependent upon the said decedent for his maintenance and support. That by reason of the death of the said Veronica Biehl, the plaintiffs have been deprived of her *love, society, comfort* and *protection,* all to their damage in the sum of twenty-five thousand ($25,000.00) dollars." (Italics ours.) All defendants put these allegations in issue. There is no evidence in the case relating to these issues except those concerning Conrad Biehl, the husband and father. That the alleged sons and daughter are in fact sons and daughter of Mr. and Mrs. Biehl is not specifically admitted nor proved but we take it that the stipulation may be extended by construction to admit this. It is contended by appellants that this stipulation should be construed to mean that there were no compensable damages suffered by the sons and daughter of any nature including "love, society, comfort and protection". We think the stipulation cannot be so construed. There can be no question but that the adult and nondependent children of a deceased person may in proper cases recover damages estimated upon a pecuniary basis for the loss of society, comfort and protection. In the instant case no question as to pleading is raised, no evidence (except as to the relationship as covered by stipulation) is had and the court submitted the claim to the jury through the following instruction: "If you find from a preponderance of the evidence that the plaintiffs are entitled to recover herein, you should then consider the question of their damages, and

if you find for the plaintiffs then you will award them damages in such amount as will in your judgment fairly compensate them for the loss of society and comfort and services, if any, sustained by them as a result of the death of their wife and mother, Veronica Biehl. In determining the amount of your verdict you may take into consideration the amount expended or incurred by the plaintiffs for the funeral expenses for the burial of said decedent, and also such pecuniary loss sustained by the plaintiffs, if any, by being deprived of the services, society and comfort of the said Veronica Biehl." There are other instructions in which the word "plaintiff" in the singular is used but we think this does not change the fact that the court did submit the question of damages to all the plaintiffs to the jury. It is also true that the court carefully defined "pecuniary damages" and in many cases in referring to damages followed it up with "if any". But we think the full damage allegation was submitted to the jury. Thereafter the jury returned its verdict as follows: "We, the jury in the above entitled action, find for the plaintiffs Conrad Biehl, Henry Edwin Knechtel and Edna Odella Hilbert and against the defendants Edward L. Bowker, Walter K. Bowker, Harriet B. Bowker and A. G. Dentman and assess their damages in the sum of $7,850.00 this 14th day of April, 1930." The court caused a judgment in accord therewith to be entered. Both appellants think this verdict and judgment is contrary to the evidence and against law. We will confess that there is much to be said in support of these claims but we shall not analyze the arguments for the reason that we think the opinion in the recent case of *Gilmore* v. *Los Angeles Ry. Corp.*, 211 Cal. 192 [295 Pac. 41], is conclusively against appellants' contentions and arguments.

We shall now turn our attention to the several assignments of error specifically concerning the court's instructions and shall first consider those of appellants Bowker.

█ The court gave a number of instructions in which a specific speed is assumed or defined as the limit of a lawful speed. Appellants Bowker contend that this was error, that the California Vehicle Act does not fix any rate that is unlawful in civil matters and that "it is always the right of the jury to decide whether or not a given speed is reasonable under all of the circumstances surrounding an

accident". In view of the doctrine expressed in the opinion in *Benjamin* v. *Noonan,* 207 Cal. 279 [277 Pac. 1045], and California cases following that case, we think it would be profitless to discuss appellants' very able argument upon this subject. Such instructions are not erroneous as to this point.

These appellants complain that error was committed in the court's refusal to give several of their proffered instructions, but the law sought to be conveyed to the jury thereby, reached the jury through other instructions.

We shall proceed to discuss appellant Dentman's exceptions numbers 24, 27, 31, and 33, respecting the giving and the refusal to give certain instructions.

*Ruling and Exception No. 24.*

(Instruction for defendants Bowker.)

"You are instructed that section 131 of the California Vehicle Act, subsection (a) thereof provides as follows: 'When two vehicles approach an intersection of public highways at approximately the same time the vehicle approaching from the right shall have the right of way, *provided such vehicle is traveling at a lawful speed,*' and if you find from a preponderance of the evidence that the defendant Dentman violated said section of the California Vehicle Act immediately prior to and at the time of the collision in question, then you will find said defendant to have been guilty of negligence as a matter of law, and if you further find that such negligence on his part was the sole proximate cause of the accident in question, your verdict in this case will be in favor of the plaintiff and against the defendant Dentman but will be in favor of the defendants Bowker."

We do not understand that this instruction is in and of itself claimed as erroneous, but that it must be considered in connection with the others above noted.

As to exception number 27, it is sufficient to say that the instruction refers to the matter of a boulevard stop and that appellant is mistaken in his assertion that the court did not define the expression "boulevard stop". Appellant in this connection asserts "That the uncontradicted evidence discloses that appellant, on reaching the intersection . . . brought his car to a stop before proceeding into the intersection." True, no witness testified that he saw this appellant (Dentman) drive into the intersection without

stopping and Dentman testified that he did stop. But this was not conclusive and did not preclude the jury from considering all of the circumstances of the collision that were presented to them in determining the truth of this important point.

### Ruling and Exception No. 31.
#### .(Instruction for defendants Bowker.)

"You are instructed that if you find from a preponderance of the evidence that at the time the defendant Dentman entered the intersection in question the vehicle of the defendant Bowker had entered said intersection, then you will find the defendant Dentman to have been negligent with reference to his failure to observe the right of way rule, and if you further find that such negligence on the part of the defendant Dentman was the sole and proximate cause of the accident in question, then your verdict in this case will be in favor of the plaintiff and against the defendant Dentman, but will be in favor of the defendants Bowker."

By this instruction the jury was told that if Bowker entered the intersection first then Dentman violated the right of way rule when he entered. Thus the right of way goes to Bowker without any requirement as to his legal speed. Bowker himself named the speed at which he approached and entered the intersection at a mileage greater than the law allows. Could it be said that he would still have the right of way? It would seem to us that a right of way is only for those who are themselves obeying the law. This instruction was erroneous.

### Ruling and Exception No. 33.
(Defendant Dentman's Instruction No. 4, as modified by the court.)

"You are instructed that while the defendant Bowker would have the right of way over the defendant Dentman because of the fact that the defendant Dentman was approaching from his left, still, if the defendant Dentman had entered the intersection, ~~or was closer thereto than the defendant Bowker, he~~ [prior to the time defendant Bowker reached the intersection], Dentman would have the right of way, and would not be guilty of negligence in attempting to proceed forward in said crossing [provided that Dentman approached and entered said intersection at a lawful rate

of speed]. (Given as modified.) Hahn. (Parts in brackets added by the court and parts with line through stricken by court from the instruction as requested.)''

Appellant points out that this instruction is to the effect that Bowker being on the right of Dentman, Bowker had the right of way unless Dentman entered the intersection first, under a legal rate of speed. In other words, the meaning of this instruction is that because Bowker was on the right he had the right of way unless (1) Dentman had entered the intersection first, and (2) was within lawful speed. It will be seen that there was no requirement whatever as to Bowker's speed. Our comment and ruling on the last preceding exception apply equally to this instruction.

This case is one in which it seems to us that a confusion of instructions on the subject of right of way may well have confused the jury into determining actionable negligence through error of understanding as to the law.

To the argument that the quotation of the law in instruction 24 cured the defects pointed out in 31 and 33, we think there is a conclusive answer. The quoted law uses the expression ''When two vehicles *approach* an intersection'', whereas instruction 31 does not use the word *approach* at all but uses the term ''entered the intersection;'' instruction 33 speaks of Bowker's right of way because ''Dentman was *approaching* from his left, still, if the defendant Dentman *had entered* the intersection prior to the time defendant Bowker *reached* the intersection, Dentman would have the right of way, and would not be guilty of negligence in attempting to *proceed forward in said crossing* provided that Dentman *approached and entered* said intersection at a lawful rate of speed.'' With the aid of our italicized words it will not require great concentration to appreciate the very different subjects treated in this instruction and the quoted law in instruction No. 24.

While we do not approve of the reversal of jury verdicts upon technical errors and do approve of the liberal application of section 4½ of article VI of the Constitution, we think that since the proximate cause in this case must be determined by a very close analysis of the evidence and the instructions, the cause must be reversed as to each appellant.

The order in each appeal is: Judgment reversed, cause remanded for retrial.

Works, P. J., and Craig, J., concurred.

A petition by respondents to have case No. 7657 heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 7, 1933.

Curtis, J., dissented.