[Civ. No. 6273. Third Appellate District.—November 27, 1939.]

FUSAE INOUYE et al., Respondents, v. L. W. McCALL et al., Appellants.

Neumiller & Ditz, Irving L. Neumiller, Frank V. Campbell and Robert E. Hayes for Appellants.

Glenn West and Robert H. Rinn for Respondents.

PULLEN, P. J.— From a judgment entered against appellants for the death of Frank Inouye, the husband and father of plaintiffs, this appeal is prosecuted.

The record discloses, and it is conceded by appellants, that there was substantial evidence to the effect that Relv Taylor, one of the appellants, was operating the truck involved in the accident in a negligent manner at that time and place and that he was then the employee of defendant McCall and was acting within the scope of his employment. It is also conceded that the amount of the award was not excessive.

Two points are urged for a reversal: First, that the trial court committed error in refusing to allow defendants to inspect certain notes and memoranda to which a witness had referred during his direct examination; and, secondly, that the decedent was guilty of contributory negligence.

As to the first point, the record discloses that plaintiffs called to the witness stand Homer F. Raleigh, a state highway patrol officer. On direct examination he was asked as to the time he arrived at the scene of the accident. He answered approximately 2 P. M. Then the following took place: "Q. Did you make a report that day while you were there? A. Yes, I did. Q. And have you that report with you? A. I have. Q. Made it in your own handwriting? A. It is. Q. Was it made at the time when you examined the intersection and the objects at the intersection? A. Yes. Q. Then refreshing your memory from your notes and the report, what time was it when you arrived there? A. Two o'clock, 2 P. M.". The witness then testified at considerable length and some detail as to what he saw at the scene of the accident and located various points upon a map in evidence and gave distances of these points from fixed objects designated on the map. Upon cross-examination, Mr. Neumiller, one of the attorneys for the defendants, said to the witness: "May I see that report and diagram? A. You can see the diagram, but don't look at the copy. Q. You have been using this re-

port to refresh your recollection today, haven't you? A. Yes, but this on the back of that report is strictly confidential, through the Vehicle Code, which states that, and that is not for you to read, Mr. Attorney. Mr. Neumiller: If your honor please, I would ask leave to examine this report. The witness: That cannot be read, your honor. Mr. Neumiller: (continuing) from which the witness—The court: Your motion will be denied.''

Counsel then developed the fact that the report was made out about 9:30 o'clock of the evening of the accident from data obtained at the scene of the collision during the afternoon. Then followed: ''Q. And it is from this report, based upon those original memoranda of yours, that you have given your testimony here today? A. That is right. Mr. Neumiller: I renew the motion, if your honor please, that I have the right to see the document from which this witness has refreshed his recollection. The court: Motion will be denied.''

This ruling clearly was error. There is nothing in our statutes making the notes, memoranda or report of a highway patrol officer confidential. Only those reports are confidential which are so made by section 488 of the Vehicle Code and include the report required of the driver (sec. 484, Vehicle Code), the owner's report, (sec. 485, Vehicle Code) and the coroner's report (sec. 487, Vehicle Code). Conceding the ruling of the court was error and assuming that the witness referred to his notes not only to fix the time of his arrival at the scene of the accident, but also to locate upon the map in evidence the relative positions of the various physical objects, we cannot, however, say the ruling was prejudicial. The entire testimony of Raleigh could have been stricken out and it is quite evident it would have made no difference in the result of the trial. Every material point brought out by Raleigh had been covered by some other witness. Raleigh testified he was a member of the highway patrol; that he arrived at the scene of the accident about 2 P. M. of that day. He described the position of the two vehicles, giving various distances in feet and indicating the same upon the map in evidence. He also removed and presented in court two louver strips taken from the Ford, being the two metal strips that extend along the hood on the left side of the car. These strips showed yellow paint. He also examined the yellow

license plate on the front of the truck and found scratches where the paint had been rubbed off.

Among the other witnesses was a surveyor who prepared an accurate map of the intersection with the physical objects located thereon. Another witness who arrived at the scene of the accident at about 2 P. M. took several photographs of the intersection and the cars in the positions in which they came to rest after the collision. Another witness who arrived somewhat later also took other pictures and also testified as to various marks shown upon the highway.

Ralph B. Sutton, a sergeant of the highway patrol, accompanied Raleigh to the scene of the accident. He testified as to the relative positions of the two vehicles, the marks upon the ground and the apparent points of impact on the Ford. No objection was interposed to the testimony of Sutton, the engineers nor to the two photographers, all of whom seem to have covered the testimony offered by Raleigh. This is a situation for the application of the rule that no judgment should be set aside unless after an examination of the entire cause, including the evidence, the court should be of the opinion that the error complained of resulted in a miscarriage of justice.

While the right to examine a writing used by a witness to refresh his memory given by section 2047 of the Code of Civil Procedure is to protect an adverse party against false, forged or manufactured evidence or to aid in developing circumstances that might detract from the weight of the testimony (Jones Commentaries on Evidence [2d] vol. 5, p. 4677; Wigmore on Evidence [2d] vol. 2, p. 762), and is a right to be protected by the reviewing court, we cannot under the circumstances here say defendant has been injured by the ruling complained of. There was no dispute in the testimony as to the physical facts. The evidence of the witness was in effect cumulative, and it is apparent that the error complained of did not result in a miscarriage of justice.

The second point is that the court erred in finding that the deceased exercised ordinary care in the premises, and was not guilty of contributory negligence.

Viewing the testimony most favorable to the holding of the trial court, we find that the deceased was traveling easterly in a Ford coupe along a through highway. Defendant Taylor was operating a truck and trailer some sixty feet in length,

loaded with barley, in a southerly direction along a county road intersecting the through highway at right angles. Stop signs were posted at the intersection, requiring all vehicles to stop before entering the through highway. The two vehicles collided approximately ten feet south of the center of the intersection and approximately six feet west of the center line of the through highway, and both came to rest approximately fifty feet south of the intersection in a vineyard to the east of the roadway. The photographs in evidence show the front of the Ford uninjured, but the left center side was crushed in, indicating a terrific blow had been delivered on that side of the Ford. The front of the truck showed marks of having struck the coupe. The testimony of the driver of the truck was conflicting in many particulars, but he admitted he did not stop before entering the intersection. He said he slowed down to from two to four miles an hour at the point of the stop sign and then quickly accelerated his speed into the intersection and was going approximately fifteen miles an hour at the instant of the impact. He also testified that at the moment of impact his foot by mistake struck the accelerator instead of the brake. He admitted seeing the coupe traveling east along the highway when he was about ten feet south of the stop sign. At that time the Ford was less than two hundred feet west of the intersection, traveling approximately forty-five miles an hour.

Upon this testimony we cannot assume that deceased was negligent. He had a right to believe the driver of the truck would obey the law and stop at the arterial and yield to him the right of way. Neither have we any testimony before us that the deceased had not reduced the speed of his car before entering the intersection, for the truck driver after seeing the approaching car of deceased then glanced in the opposite direction for cars approaching from that direction and did not again see the Ford until the instant of the impact.

By section 552 of the Vehicle Code the driver of a vehicle which has stopped at the entrance of a through highway shall yield the right of way to other vehicles which are approaching so closely on the through highway as to constitute an immediate hazard, and surely a driver who has disregarded the law and failed to stop at an arterial is in no better position. Here the deceased, less than two hundred feet away, traveling at an

ordinary rate of speed, would constitute an immediate hazard to a slow-moving, heavily-laden truck and trailer.

There is ample evidence to support the finding of the trial court that the deceased was not guilty of contributory negligence, and an examination of the entire record reveals no error of sufficient importance to justify a reversal.

The judgment is affirmed.

Tuttle, J., and Thompson, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 25, 1940.