[Civ. No. 4465. Fourth Dist. Nov. 5, 1953.]

HARRY FREEDMAN et al., Appellants, v. RAYMOND EUGENE WILLEFORD et al., Respondents.

Sowell & Stern for Appellants.

Parker, Stanbury, Reese & McGee for Respondents.

GRIFFIN, J.—Plaintiffs, as owners and occupants of a Nash sedan, brought this action for personal injuries and property damage against defendant Raymond Eugene Willeford, driver, and A. E. Fowler and Sons, a copartnership, owners of a truck loaded with a jib boom, which plaintiffs allege contacted their vehicle while they were passing the truck on the highway.

Defendants denied generally the allegations of the complaint and alleged contributory negligence and unavoidable accident. A verdict by a jury resulted in favor of defendants. A motion for a new trial was denied. On this appeal, presented by other counsel than those who tried the case, plaintiffs contend: (1) that the verdict was against the weight of the evidence; (2) that the court should not have instructed the jury on contributory negligence and unavoidable accident; and (3) misconduct of counsel for defendant.

The accident occurred November 7, 1950, at about 6:30 p. m. It was dark. Plaintiffs were proceeding west on Orangethorpe Avenue toward Norwalk at about 30-35 miles per hour. They noticed some headlights approaching from the opposite direction which were from the truck owned by defendant company. As the cars passed each other something struck the windshield and top of plaintiffs' car and demolished it. The truck had a flat bed 7½ feet wide and 9 feet long. It had a 15-foot crane boom loaded in the center of the truck extending from the cab to approximately 5½ feet past the rear of the truck. After the impact defendants' truck stopped about 300 feet away from the point of impact and it was then noted that the chain holding the crane boom had become loosened and evidently was the object which had come in contact with plaintiffs' automobile. One of the chains on defendants' truck had a chain binder on it to fasten down the chain involved and the chain binder and handle extended about 2 inches over the left side of defendants' truck and down toward the pavement. The rear end of the jib was not lighted and no reflectors were placed on it. From the end of the chain binder handle to the ground was 33½ inches. From a dent in the front and top of plaintiffs' left-hand fender on his car to the ground measured 35 inches. The truck was brought to the courthouse and exhibited to the jury and the defendant Willeford demonstrated the manner in which the chain and

the chain binder were attached to the truck and how the jib was fastened to the truck so it could not move under ordinary circumstances. At the request of plaintiffs' attorney, Willeford demonstrated to the jury how the chain binder could have been knocked loose by contact with the left front fender of plaintiffs' automobile.

Willeford testified generally that after the chain binder was properly put in place and the load otherwise properly secured he and his assistant left Paramount, a few miles distant from where the accident occurred, and traveled at a speed of 40-45 miles per hour over paved roads until the alleged accident took place; that they checked the load on several occasions after they started on the trip; that his truck was at all times well on its own side of the center line of the roadway. He testified that there was a three-lane highway up to a distance of 300 feet from the point of accident and then it narrowed down to a two-lane highway as it crossed a narrow bridge 75 feet in length; that when about one-third of the way across the bridge traveling at about 40-45 miles per hour, he felt a jar as though his load had shifted on the truck; that he brought it to a stop on the east side of the bridge; that shortly thereafter the plaintiffs drove up from the west; that when he examined the load he found that the chain binder had been unlocked and it was loose and the chain on the front end of the boom was also loose; that the chains both on the front and rear end of the boom were still in place, but loose in such a manner that the boom could move from left to right on the truck body; that he replaced and refastened the jib boom and did not realize it had struck any object until plaintiffs informed him that it had struck their car.

It was defendants' contention at the trial that in passing, the left front fender of plaintiffs' Nash car struck the binder handle and loosened the chain, causing the boom to swing in front of plaintiffs' windshield, and by reason thereof the plaintiffs' injuries resulted.

It is the testimony of plaintiff Harry Freedman that the point of collision was not on the bridge but about 300 feet west of it, where the three-lane highway existed; that the truck was in the south lane and his car was proceeding in the north lane, and that when they passed each other they were at least 12 feet apart and that the boom was extending across this center lane when the driver's side of his windshield collided with it, breaking the glass and injuring the top of his car and causing him and his wife injuries.

A highway patrolman arrived at the scene, interviewed the parties, and concluded that the point of impact was at the west entrance of the bridge which narrowed down to two lanes of approximately 9 feet each.

In answer to a question propounded to Willeford by counsel for defendants, he stated that he did not know whether or not the cause of the loosening of the chain and binder in its locked position was from rough roads, but it could have been from contacting the binder by the fender of the plaintiffs' car approaching from the opposite direction. Counsel for plaintiffs cross-examined him on this subject and asked the witness if, under the facts related by him, considering the speed of the two vehicles and time element, the boom could swing out and strike the windshield of plaintiffs' car, and the witness answered that he did not know about that but that it might do so. Counsel for plaintiffs then propounded a similar question to the highway patrolman and he replied that it was his opinion that it would hardly be possible and stated his reason for so believing.

This was the main subject of contention of respective counsel at the trial and in the argument to the jury, which argument bore on the question of the negligence of defendants and the contributory negligence of plaintiffs.

In a deposition taken of plaintiff Mr. Freedman, he testified that his car did not strike any portion of the truck or its equipment as it was fully 12 feet from it when he passed it. He further testified that his car had no marks on it other than the usual unobservable scratches found on any car. When photographs of the Nash were produced in court they clearly showed a heavy indentation near the front and on the top of the fender of the Nash car, and when it was called to Freedman's attention at the trial he then stated for the first time that he remembered his son was in an accident a few months before this and that the car had been repaired excepting this portion of the fender. He claimed that he had obtained estimates on its repair from certain individuals but was unable to locate them at the time of trial. The case went to the jury on the issues thus presented. Unquestionably, there was a conflict in the evidence as to whose negligence caused the accident. The question of plaintiffs' contributory negligence was properly submitted to the jury. While the sufficiency of the evidence to warrant the giving of an instruction on unavoidable accident may be questioned, the giving of such an instruction, under the circumstances, was not prejudicial

error. (*Parker* v. *Womack,* 37 Cal.2d 116 [230 P.2d 823];
*Astone* v. *Oldfield,* 67 Cal.App.2d 702, 708 [155 P.2d 398].)
The question of defendants' liability for the injuries claimed
to have been suffered by plaintiffs might well have been dis-
posed of by the ultimate finding of the jury in respect to their
contributory negligence. However, in connection with the
claimed injuries sustained the jury no doubt was not too favor-
ably impressed with plaintiffs' claim. The amount of damages
sought was $50,000, for injuries to both plaintiffs. At the
trial it was stated that the wife's injuries were only superficial
cuts of her hands in brushing the glass from her lap. Neither
party claimed any personal injury at the time of the accident
other than superficial cuts from glass on Mr. Freedman's
scalp. They drove their car away that evening. Later, Mr.
Freedman went to two doctors and complained of eye dis-
order, loss of hearing, back injuries, nervousness, etc. These
doctors testified that there were no eye injuries traceable to
this accident and no particular permanent injuries found
except that Mr. Freedman did complain of loss of hearing due
to a bump on his head; that they did not find any evidence
of head injury but found that he was hard of hearing and
that they did not know if he was so afflicted before the accident.

In Mr. Freedman's deposition he testified there was no im-
pairment in his hearing prior to the accident, excepting a
partial loss of hearing many years prior to it but that it soon
cleared up and that he never wore a hearing aid. At the
trial defendants produced plaintiffs' own insurance agent who
testified that Harry Freedman was always hard of hearing
and that he saw no difference between his former condition
and that subsequent to the accident. It was brought out at
the trial that Freedman had made a claim, in his name, through
this agent, for the loss of a hearing aid, as being stolen from
his car just a short time before the accident. Freedman then
claimed that this hearing aid belonged to a dead relative and
that he made the claim for its loss in her behalf. He produced
certain customers who claimed his hearing was not impaired
prior to this accident. Counsel for plaintiffs attacked the
veracity of this insurance agent (Mr. Boyd) before the jury,
and at one point became so convinced as to his belief that he
was testifying falsely that he remarked: "People don't act
like Mr. Boyd. You cannot, any, any one of you, think of
anything close to you, and you find anyone who would have
handled this situation who was on the level, as Mr. Boyd

did. Then I say give a defense verdict, give a defense verdict." The effect of the suggestion, as we interpret it, was that if the jury did believe Boyd, it should give a defense verdict. This may have been the answer to the suggestion. If so, plaintiffs' counsel should not be heard to complain.

Counsel for defendants did suggest that if the jury did find defendants negligent and plaintiffs free from contributory negligence, the verdict should be for the costs of repair of the car and for such injuries as plaintiffs may have clearly established, and suggested an amount not to exceed $500. It would appear, therefore, that the jury concluded that the plaintiffs had not met the burden of proving negligence or that defendants had established contributory negligence on the part of plaintiffs.

The claimed misconduct of counsel for defendants consists in certain statements he made to the jury after counsel for plaintiffs, who tried the case, made some uncomplimentary remarks about Mr. Boyd to the jury, wherein he stated that he thought Boyd was "the kind of man that a few dollars will influence," and intimated, at least, that counsel for defendants or "somebody" must have made it "worth while" in order that he would so testify.

In reply, counsel for defendants made certain statements which ran, in general, as follows:

"It's sort of hard to sit here to have a man like this fellow here say things to you at a place where he can get away with it, or say things about you that he wouldn't dare say down in the alley back of my house, or that he wouldn't dare say over in Boyd's office, because I don't know whether I could do it or not, but I know very well that Boyd could certainly throw him clear across the street and bounce him on his head a couple of times, which he just exactly very richly deserves. . . . That fellow is talking to you from the depths of a cesspool, which is the way he thinks, apparently."

In their reply brief, counsel for defendants stated that present counsel for plaintiffs on this appeal did not fully understand the "most unsavory atmosphere of the court room at the time" but "Looking back upon the entire procedure now, after a cooling off period of several months, counsel for defendants must admit that some of the remarks and statements made by him are not to be used as models or illustrations for law students on the subject of how a lawyer should conduct himself in court." Counsel for plaintiffs may well have made a similar concession.

It is readily apparent that while certain comments of defendants' counsel may well be termed acrimonious, intemperate and wholly unnecessary, the same observation applies with equal force to the comments of plaintiffs' counsel. The entire case appears to have been tried in an atmosphere of decidedly heated advocacy. However, we cannot say that under the circumstances the comments were so prejudicial and uninvited as to warrant this court in reversing the judgment, particularly where, in no instances brought to the attention of this court, did counsel for plaintiffs make any objection nor did he assign such statements as misconduct or ask the jury to disregard them. By proper instruction the court told the jury that it should not consider as evidence any statement made by counsel on either side, and that it must decide the case upon its merits and the evidence produced. On a motion for new trial all these claims were presented and the trial court denied the motion. No prejudicial error appears and no abuse of discretion is reflected in the record.

Lastly, defendants claim that the appeal, insofar as it affects the judgment rendered in favor of defendant Raymond Eugene Willeford, is moot. This claim is based on the notice of appeal, which recites: "To Raymond Eugene Willeford, et al, and to . . . his attorneys: Notice is hereby given that the plaintiffs . . . hereby appeal . . . from the judgment heretofore made herein and entered herein on the 16th day of April, 1952 . . . in favor of the defendant, Raymond Eugene Willeford." No mention is made therein of the remaining defendant or defendants, employers of Willeford, in whose favor the judgment also ran. However, the notices to the clerk, reporter and defendant Willeford *et al.* recite that "plaintiffs have appealed from the judgment . . . rendered therein." Plaintiffs claim that the omission of the words "et al." after Willeford's name in the body of the notice of appeal was a clerical error. Since the notice of appeal is "from the judgment entered . . . on the 16th day of April, 1952," we feel charitable enough to believe that plaintiffs intended to appeal from the entire judgment and not limit it to that portion pertaining to the driver, Willeford, and since the judgment must be affirmed on the grounds stated, no further consideration will be given to this point.

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.