[Civ. No. 4730. Fourth Dist. Dec. 18, 1953.]

MARY SHIYA et al., Appellants, v. ODIS F. REVIEA
et al., Respondents.

Joseph A. Lazaroni, Edmund M. Bluth and Henry F. Walker for Appellants.

Clarence Sprague for Respondents.

GRIFFIN, J.—On July 14, 1951, about 5 a. m., Albert J. Shiya was driving his car (a 1939 Pontiac sedan in which was seated as a guest Victoria Zieda) west on Orangethorpe Avenue, near Buena Park. Defendant Robert Hendrix was driving north on Walker Avenue, an intersecting street (in a 1950 Dodge convertible coupé automobile belonging to defendant Odis Reviea). Orangethorpe Avenue was a through highway, protected by stop signs, with four marked traffic lanes. Walker Avenue was a two-lane street running north and south, with a center line. Stop signs existed on two corners regulating traffic on Walker Avenue. The intersection was located in a more or less open territory. The two cars met in the intersection and a collision occurred. Mrs. Zieda, the guest, and defendant Hendrix were severely injured. Mr. Shiya was killed.

The widow and heirs of Mr. Shiya brought an action for wrongful death against Reviea and Hendrix. Mrs. Zieda, as guest, brought a separate action for damages for personal injuries against the same defendants. Both cases were tried together before the same jury which returned a verdict against plaintiffs in each case. Upon separate motions for new trial the court granted the motion of the guest, Mrs. Zieda, on the ground of insufficiency of the evidence, but denied such a motion as to the Shiya action. The order granting the motion has become final. Plaintiffs Shiya appeal from the judgment and from the order denying their motion for new trial. Since such latter order is not appealable, the attempted appeal therefrom must be dismissed. (*Pearson* v. *Hill*, 86

Cal.App.2d 664 [195 P.2d 45]; West's California Digest, vol. 6 [Appeal & Error], Key 782, p. 79.)

There was no evidence of contributory negligence on the part of Mrs. Zieda and the court so instructed the jury. The granting of a new trial to her clearly indicated that the court disagreed with the jury's verdict that there was no negligence on the part of the defendants, and in effect held that there was negligence on their part and that such negligence was the proximate cause of her injuries.

As to the Shiya action, the evidence clearly establishes negligence on the part of Hendrix. The only question we see here presented is whether there is a failure of proof of any contributory negligence on the part of Albert J. Shiya, the deceased, which would support the finding of the jury on this issue.

All indications, both from the photographs introduced and the description given by the witnesses, are that the intersection is an open one in the immediate vicinity of the accident, at least to the east and south, from which the two colliding vehicles were approaching. There was a conflict in the evidence as to whether it was dark at the time of the accident and as to the extent of visibility, other than that there were lights on the cars. It was agreed that it was incumbent on Hendrix, who was driving north on Walker Avenue, to observe the boulevard stop, since Orangethorpe was a through street.

Mrs. Zieda was knocked unconscious and did not remember anything leading up to the accident. There were only two eye witnesses, defendant Hendrix and a Mr. Van Arkel, whose truck had been traveling south on Walker Avenue with its lights burning, but which truck had been stopped at the stop sign approaching Orangethorpe Avenue. He testified that while in that position he first saw the headlights of decedent's car and it was traveling west on Orangethorpe about 400 feet from the intersection, and when he first saw the defendants' car coming north on Walker Avenue with its lights burning, it was about 900 feet from the intersection; that he continued to watch the defendants' car up to the point of collision; that he was experienced in judging the speed of cars, having clocked cars for that purpose; that he estimated the speed of defendants' vehicle at the time it entered the intersection, and without making the boulevard stop, at 70 miles per hour; that it did not slow down at any time before the collision with the Shiya car; that he estimated

the speed of the decedent's car at 45 miles per hour but did not notice whether it reduced its speed prior to the accident because he was watching the faster moving car; that he did not notice any change in direction of the Hendrix car on its entering the intersection, and did not see any signal given by its driver indicating any intention to turn to his left; that the last time he observed the Shiya car it was about 60 feet from the intersection and Hendrix was then about 60 feet from him; that it was at that time he first thought there was going to be an accident.

Hendrix testified he borrowed the convertible from Reviea and took a girl to a dance in Anaheim; that he had three bottles of beer and later returned to his home but did not sleep much; that he decided to go to Firestone and Lakewood Boulevard to look at a car, and then was going to borrow some money from an uncle to purchase a convertible Buick; that he drove up Walker Avenue at a speed of between 40 and 50 miles per hour with his lights turned on; that it was dark at the time; that he began to slow down about 200 yards south of the intersection and started applying his brakes; that he knew there was a boulevard stop at the intersection; that he was going "real slow" as he came up to the intersection and at no time did he make a complete stop before entering it but estimated his slowest speed at the boulevard stop sign about "maybe one or two miles per hour . . . something like that" or "maybe one-half mile per hour"; that after entering the intersection he waited to see if the south-bound truck of Van Arkel was going to stop at the intersection; that he looked or glanced, but saw no cars approaching on Orangethorpe Avenue in either direction; that when he was about in the middle of the intersection he stopped his car to see whether the truck was going to stop; that when the accident happened he had started to make a left-hand turn and his car was in a northwesterly position or angle, and had passed over the center line of Orangethorpe at that time; that he did not see and had no knowledge of how far the decedent's car was from him at the time he entered the intersection; that all he saw was a flash of lights right on top of him at the time of the collision; that he remembered when he started to make a left turn in the intersection; that he set his left-hand signal light and "just stepped on the throttle and started away" when the collision occurred.

An officer of the highway patrol testified he conversed with Hendrix about 11:45 a. m. on July 16, at the hospital, and

Hendrix said he was traveling about 40 miles per hour at the time of the accident; that a car was approaching him on the same highway and came over into his lane of traffic and hit him; that he did not remember seeing any boulevard stop sign, and did not remember where the accident occurred; that he knew nothing more because he was knocked unconscious.

Hendrix testified he did not remember any such conversation. The coroner testified he smelled Hendrix's breath that morning about 7 a. m. in the hospital and "it had a strong alcoholic" odor.

From an examination of the photographs of the respective cars and their location after the collision, it indicates that the right-hand one-half of the Hendrix car was practically demolished and that the left-hand half of the Shiya car was crushed to some extent. The Shiya car did not progress any great distance beyond the point of impact. The Hendrix car was found in the field at the northwest corner of the intersection after crashing into a stack of boxes or lumber which was lying there.

At the outset it is conceded by all parties that plaintiffs were entitled to the so-called presumption, as instructed by the court, that the decedent, in his conduct at the time of and immediately preceding the accident, was exercising ordinary care and obeying the law. (*Hill* v. *Ralph,* 117 Cal.App. 2d 434 [256 P.2d 48].)

The contention is made by defendants, on this appeal, that from certain facts testified to by Hendrix, and by mathematical calculation, the jury could infer that Shiya was not looking and did not see the Hendrix car as it approached the intersection or that Hendrix entered the intersection first and accordingly Shiya was obligated, under the law, to yield the right of way to Hendrix. In this connection it is argued that the jury was authorized to believe that Hendrix, although he did not completely stop at the stop-sign, did slow down to one mile or less per hour, and that this was a stop for all practical purposes, and the section of the Vehicle Code requiring him to stop was not violated and he was excusable under the circumstances. It is then argued, mathematically, that if Hendrix was traveling at one mile per hour or less, as he entered the intersection, and did not increase his speed and traveled at least 25 feet at that speed before he stopped his car, and if he stopped his car for a period of one or two seconds as he said he did before the time of impact, Hendrix's car was in the intersection for 18 full seconds and was there

in plain view of decedent for an approximate period of 16 seconds and accordingly, traveling at 45 miles per hour, the deceased was negligent in not seeing the Hendrix car and in not stopping his car and avoiding the collision; or that the jury may have concluded that each car approached the intersection in complete disregard of the other, arriving there at the same time, and that both were negligent; or that decedent should have seen what Van Arkel saw, i. e., that Hendrix was approaching at 70 miles per hour without slowing down, and that if deceased did not observe this he was negligently inattentive, or if he did see it and did not slow down he was likewise careless, citing such cases as *James* v. *American Buslines,* 111 Cal.App.2d 273 [244 P.2d 503] ; and *Dickinson* v. *Pacific Greyhound Lines,* 55 Cal.App.2d 824 [131 P.2d 401].

The question whether one is guilty of contributory negligence is usually one for the jury and becomes a question of law for the decision of the court only when the facts are undisputed, and even then, only where, on those facts, reasonable minds can draw but on conclusion on the issue of plaintiff's negligence. However, these observations are subject to the qualification that, in cases involving collisions with automobiles, as in other cases, all conflict of evidence must be substantial and real. (3 Cal.Jur., p. 984, § 219.) Otherwise, an appellate court will not interfere with the jury's determination as to the credibility of witnesses where the evidence is conflicting except where the testimony of the witness is inherently improbable and impossible of belief. (27 Cal.Jur., p. 186, § 157.) The amount of credit to be given to the positive testimony of a witness is solely a question for the trial tribunal. (2 Cal.Jur., p. 916, § 541.) In the face of the testimony of the disinterested witness and the circumstances and facts related, the testimony of the defendant Hendrix does not appear very convincing to us. However, it is apparent that the trial court and jury must have believed his story, and the deductions made by counsel for defendants from the facts related by him. To us, from the cold record, it would seem that the trial court might well have granted the motion for new trial in respect to these plaintiffs also. However, we are bound by different rules, on a motion for new trial, from those which guide the trial court in its consideration of the evidence and the credence to be given to the several witnesses, and conclude that we may not, on appeal, disturb this order. (*Bramble* v. *McEwan,* 40 Cal.App.2d 400 [104 P.2d 1054] ; *Dickinson* v. *Pacific*

*Greyhound Lines,* 55 Cal.App.2d 824 [131 P.2d 401]; *Clark* v. *Wallman,* 116 Cal.App. 278 [2 P.2d 562].)

In *Inouye* v. *McCall,* 35 Cal.App.2d 634 [96 P.2d 386], relied upon by plaintiffs, under a similar set of facts there was a finding of the trial court that the plaintiff was not guilty of contributory negligence and the appellants therein contended that the facts related constituted contributory negligence as a matter of law. The court there held that such facts did not constitute negligence as a matter of law.

In *Angelo* v. *Esau,* 34 Cal.App.2d 130 [93 P.2d 205], decided by this court, which is factually similar, the question of plaintiff's contributory negligence was left to the jury to determine under instructions similar to those given in the instant case and about which plaintiffs complain.

 The court gave, at defendants' request, an instruction in the language of section 552 of the Vehicle Code reading:

"Vehicle entering through highway. (a) The driver of any vehicle shall stop as required by Section 577 of this code at the entrance to a through highway and shall yield the right of way to other vehicles which have entered the intersection from the through highway or which are approaching so closely on the through highway as to constitute an immediate hazard.

"(b) Said driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection on the through highway shall yield the right of way to the vehicle so about to enter or cross the through highway."

At the defendants' request the trial court also instructed the jury:

"When the law says that one person has a right of way over another, its purpose simply is to establish a practical basis for necessary courtesy on the highway, and its meaning is that when at any given moment of time, two persons, neither of whom occupies the space in question, desire to proceed into the same place on the highway, one of them shall yield. The other has the privilege of the immediate use of the space in question. The privilege is his right of way.

"Failure to yield to one to whom the law has given the right of way is negligence unless circumstances resulting from causes beyond the control of the driver are such as to excuse and justify him in such failure, judging his conduct in the light of what reasonably might have been expected from a person of ordinary prudence."

The record indicates that the plaintiffs also requested the court to give to the jury the same instruction set forth in section 552, containing both subdivisions (a) and (b). It did give one instruction offered by plaintiffs in the language of section 552, subdivision (a) only.

It is plaintiffs' contention that the giving of the instruction in the language of section 552(b) and the following instruction was erroneous under the evidence, since Hendrix admittedly did not bring his car to a full stop before entering the intersection, and that therefore the question of right of way was not involved; that one cannot claim or secure the right of way by means of disobeying the law; and that under the instruction the jury, or at least one of the nine jurors who voted for a verdict for the defendants might have been misled into believing that defendant driver was entitled to claim the right of way, citing *Thompson* v. *Dentman*, 131 Cal.App. 680, 688 [21 P.2d 1009]; and *Inouye* v. *McCall*, 35 Cal.App.2d 634, 638 [96 P.2d 386].

Section 577 of the Vehicle Code, mentioned in section 552, *supra*, provides:

"The driver of any vehicle upon approaching any entrance of a highway or intersection . . . signposted with a stop sign as provided in this code . . . **shall stop:**

"(a) Before . . . entering such highway or intersection . . ."

In *Angelo* v. *Esau, supra*, at page 139, it is said:

"While it seems tolerably clear that Pimental did not come to a full stop before entering the intersection, the instruction by its terms excludes his right to rely on the care of others while thus negligent himself. Whether his failure to stop proximately contributed to the accident or whether, contrariwise, he had so slowed down as to amount in practical effect to the same thing as a stop, were questions for the jury. Though he were negligent in failing to stop it would not necessarily follow that the effect of such negligence continued to influence his position or action as he actually entered the intersection. By reading section 577 of the Vehicle Code, as in force when the accident occurred, the court fully informed the jury of Pimental's duty to make such stop."

It is true that the word "stop" does not mean to require a person "only to slow down." In *Wixon* v. *Raisch Imp. Co.*, 91 Cal.App. 129 [266 P. 964], it was said that the difference between the words "stop" and "wait" is infinitesimal, and in *Goldberger* v. *Market Street Ry. Co.*, 130 Cal.App. 597, 606 [20 P.2d 351], it is said that an "order to wait" is a "command to stop." In *Inouye* v. *McCall, supra*, a

truck driver said he did not stop at a stop-sign-marked intersection but slowed down to 2 to 4 miles per hour and then proceeded into the intersection. The court stated that the driver of the car on the through highway had the right to assume that the driver of the truck would obey the law and stop, and yield the right of way. However, this statement is subject to the general rule that the driver on the through highway must also be exercising due care at the time. ▇ It is only when there is nothing in the situation to warn him of impending danger that he is not guilty of negligence in relying upon such assumption. ▇ The reasonableness of the conduct of a person relying upon the assumption that another will obey the law is primarily a question for determination by the trier of fact. (*Poe* v. *Lawrence*, 60 Cal.App.2d 125 [140 P.2d 136]; see, also, *Podeszwa* v. *White*, 99 Cal. App.2d 777 [222 P.2d 683].)

▇ Since plaintiffs' complaint is based solely on the giving of an instruction containing subdivision (b) of section 552 of the Vehicle Code and the instruction that followed, we do not conclude that they are entitled to complain of this instruction because they themselves offered an instruction in the language of section 552 of the Vehicle Code, both subdivisions (a) and (b), and it was apparently refused only on the ground that it was covered by a similar instruction offered by defendants. Therefore, any claimed error in giving defendants' proffered instruction in the language of the statute would be invited. It is the general rule that a party cannot successfully complain of error which he himself has invited. (*Jentick* v. *Pacific Gas & Electric Co.*, 18 Cal.2d 117 [114 P.2d 343]; *Shapiro* v. *Equitable Life Assur. Soc.*, 76 Cal.App.2d 75, 94 [172 P.2d 725]; *Lyle* v. *Lyle*, 53 Cal. App.2d 552 [127 P.2d 1006]; *Van Der Veer* v. *Winegard*, 41 Cal.App.2d 518 [107 P.2d 97].) The instruction offered by defendants was merely an amplification of the right of way rule if the jury determined that section 552, subdivision (b) was applicable. Under the circumstances, no prejudicial error resulted.

Defendants requested and the court gave an instruction on unavoidable and inevitable accident to the effect that "Even if such an accident could have been avoided by the exercise of exceptional foresight, skill or caution, still, no one may be held liable for injuries resulting from" such an unavoidable or inevitable accident which occurred without having been caused by negligence.

An instruction offered and given in *Hyman* v. *Market Street Ry. Co.*, 41 Cal.App.2d 647, 650 [107 P.2d 485], where there was no direct or indirect evidence that the collision was a result of an unavoidable accident, was, under the facts of that case, held to be prejudicial error and misleading to the jury. In support of the reversal the court cited *Scandalis* v. *Jenny*, 132 Cal.App. 307 [22 P.2d 545]. In the instant case it is pointed out, with considerable reasonableness, that defendant driver was negligent; and that it did not appear from the evidence that the acts committed by him were unavoidable, and that since defendants claim that the deceased was guilty of contributory negligence, if true, such fact would remove any suggestion that the accident was unavoidable. A similar claim was made, however, in *Parker* v. *Womack*, 37 Cal.2d 116 [230 P.2d 823], and the minority opinion sustained this contention and cited the Hyman case as authority. However, the majority opinion appears to have overruled, or at least modified, the ruling in the Hyman case in respect to the giving of such an instruction insofar as it applies to an automobile accident at an intersection unless the plaintiff's evidence shows the negligence of the defendant as a matter of law, and that such negligence was the proximate cause of the collision or death. It was there said, at page 120, quoting from *Polk* v. *City of Los Angeles*, 26 Cal.2d 519 [159 P.2d 931], that: ". . . the so-called defense of inevitable accident is nothing more than a denial by defendant of negligence or a contention that his negligence, if any, was not the proximate cause of the injury."

Since, in the instant case, it may be questioned whether the evidence was sufficient to establish the fact that defendant driver was guilty of negligence as a matter of law and that such negligence was the proximate cause of decedent's death, in the face of the majority opinion in the Parker case, we are unable to hold that it was prejudicial error to give such an instruction. (See, also, *Freedman* v. *Willeford*, 121 Cal.App.2d 145 [262 P.2d 642].)

Attempted appeal from order denying a new trial dismissed. Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.

A petition for a rehearing was denied January 7, 1954, and appellants' petition for a hearing by the Supreme Court was denied February 10, 1954. Carter, J., was of the opinion that the petition should be granted.