[Civ. No. 6060.   Fourth Dist.   May 26, 1960.]

ARTHUR W. DAVY, Respondent, v. PUBLIC NATIONAL INSURANCE COMPANY (a Corporation) et al., Appellants.

Orlan S. Friedman for Appellants.

Morris B. Chain and S. B. Gill for Respondent.

COUGHLIN, J.—The plaintiff Davy, who conducted a business operating 27 taxicabs under the name of Yellow Cab Company, obtained a policy of public liability insurance from the defendant insurance company covering such operation. The coverage under this policy was limited to $5,000 for injury to one person. The policy provided that the company "shall defend" any suit brought against the insured alleging injury arising out of an accident in which any of his cabs was involved, but "may make such investigation, negotiation and settlement of any claim or suit as it deems expedient."

On January 8, 1956, while the aforesaid policy was in effect, a city police officer by the name of Manuel sustained serious injury as the result of a collision between the motorcycle he was riding and one of Davy's taxicabs. Manuel was responding to an emergency call at the time of the accident. Ten days later, he sued Davy for damages in excess of $225,000. The defendant insurance company, pursuant to the terms of its policy, assumed the defense of this suit. About two weeks prior to trial, the attorney for Manuel offered to settle for $4,500 but this offer was rejected by

the insurance company. A jury trial followed which resulted in a judgment in favor of Manuel for $24,268. The insurance company paid the limit of its policy, i.e., $5,000, leaving the judgment against Davy unsatisfied in the sum of $19,268. Thereupon Davy brought this action against the insurance company, its general agent, and others connected with the defense of his suit, alleging that in refusing to accept the settlement offer of $4,500 the insurance company did not act in good faith, and seeking recovery of $19,268 which was the balance due on the judgment, together with interest on that amount from the date of judgment. The matter was tried by a jury which rendered a verdict against the insurance company and the general agent in the sum of $22,400.12. Judgment was entered thereon, from which this appeal is taken.

A policy of public liability insurance by which the insurer is required to defend an action on claim covered by such policy, and is authorized to compromise the same within policy limits, imposes upon the insurer the obligation to exercise good faith in considering an offer of compromise within those limits. (*Comunale* v. *Traders & General Ins. Co.*, 50 Cal.2d 654, 659-661 [328 P.2d 198, 68 A.L.R.2d 883]; *Ivy* v. *Pacific Automobile Ins. Co.*, 156 Cal.App.2d 652, 659 [320 P.2d 140]; *Brown* v. *Guarantee Ins. Co.*, 155 Cal.App.2d 679, 682 [319 P.2d 69].) If not expressed, the obligation to exercise good faith is implied in every such contract. (*Ibid.*) Where an offer of settlement is the subject under consideration, the obligation so imposed on the insurer is to exercise good faith in considering the interest of the insured in the settlement. (*Comunale* v. *Traders & General Ins. Co.*, 50 Cal.2d 654, 661 [328 P.2d 198, 68 A.L.R.2d 883].) As a consequence, an insurer guilty of bad faith in refusing to settle a claim within policy limits breaches its contract and is liable for the entire amount of a judgment recovered against its insured, including any portion in excess of policy limits. (*Comunale* v. *Traders & General Ins. Co.*, 50 Cal.2d 654, 660 [328 P.2d 198, 68 A.L.R.2d 883]; *Ivy* v. *Pacific Automobile Ins. Co.*, 156 Cal.App.2d 652, 659 [320 P.2d 140]; *Brown* v. *Guarantee Ins. Co.*, 155 Cal.App. 2d 679 [319 P.2d 69].)

The refusal to accept a proposed settlement which, under all of the circumstances, is reasonable, constitutes a failure to exercise good faith. (*Comunale* v. *Traders & General Ins. Co.*, 50 Cal.2d 654, 661 [328 P.2d 198, 68 A.L.R.2d

883].) Stated otherwise, an unwarranted or unreasonable rejection of an offer of compromise constitutes bad faith. (*Comunale* v. *Traders & General Ins. Co.*, 50 Cal.2d 654, 659 [328 P.2d 198, 68 A.L.R.2d 883].)

In determining whether an offer of settlement is warranted or reasonable, although the insurer has the right to protect its own interests, it does not have the right to sacrifice the interests of the insured. (*Ivy* v. *Pacific Automobile Ins. Co.*, 156 Cal.App.2d 652, 659 [320 P.2d 140].)

To comply with its obligation of good faith in the premises, the insurer must take into account and give at least as much consideration to the interests of the insured as it gives to its own interests. (*Comunale* v. *Traders & General Ins. Co.*, 50 Cal.2d 654, 659 [328 P.2d 198, 68 A.L.R.2d 883] ; *Ivy* v. *Pacific Automobile Ins. Co.*, 156 Cal.App.2d 652, 660 [320 P.2d 140].) The decision on such a matter must be based not only on the probable benefit or detriment ensuing to the insurer, but also and equally upon a consideration of the probable benefit or detriment ensuing to the insured.

If "there is a great risk of a recovery beyond the policy limits so that the most reasonable manner of disposing of the claim is a settlement which can be made within those limits, a consideration in good faith of the insured's interest requires the insurer to settle the claim." (*Comunale* v. *Traders & General Ins. Co.*, 50 Cal.2d 654, 659 [328 P.2d 198, 68 A.L.R.2d 883].)

The exercise of good faith under circumstances such as those present in this case requires not only an equal consideration of the interests of the insured along with those of the insurer, but also requires that the consideration given to the offer of settlement should be an intelligent one; should be based on a reasonable investigation; and should be made by persons reasonably qualified to make a decision respecting the risks involved. (*Ivy* v. *Pacific Automobile Ins. Co.*, 156 Cal.App.2d 652, 660 [320 P.2d 140].) On the other hand, the duty to exercise good faith is not commensurate with the duty to exercise the care of an ordinarily prudent person under the same circumstances. Bad faith and negligence are not legally synonymous. (*Appel* v. *Morford*, 62 Cal.App.2d 36, 40 [144 P.2d 95].) In this state, the liability of an insurer to an insured for refusing to accept an offer of compromise resulting in a judgment beyond policy limits arises only from a breach of the covenant to exercise

good faith and not from a failure to exercise due care. (*Brown* v. *Guarantee Ins. Co.*, 155 Cal.App.2d 679, 687 [319 P.2d 69]; *Noshey* v. *American Automobile Ins. Co.*, 68 F.2d 808, 809.)

In addition to other obligations, the covenant to exercise good faith imposes upon the insurer the duty to communicate to the insured the results of any investigation indicating liability in excess of policy limits, and any offers of settlement which have been made, so that he may take proper steps to protect his own interest. (*Ivy* v. *Pacific Automobile Ins. Co.*, 156 Cal.App.2d 652, 660 [320 P.2d 140].)

Good faith implies honesty, fair dealing and full revelation. (*Hilker* v. *Western Automobile Ins. Co.*, 204 Wis. 1 [231 N.W. 257, 235 N.W. 413, 415].) Bad faith implies dishonesty, fraud and concealment. (*Appel* v. *Morford*, 62 Cal.App.2d 36, 40 [144 P.2d 95].) Neither mistaken judgment nor unreasonable judgment is the equivalent of bad faith. (*Neel* v. *Barnard*, 24 Cal.2d 406, 418 [150 P.2d 177].) As a consequence, liability upon the part of the insurer for refusal to accept an offer of settlement may not be predicated upon its failure to correctly predict the outcome of the action it is defending.

Applying the foregoing general rules to a situation such as that present in the case at bar, we conclude that an insurer acts in good faith in rejecting an offer of settlement after it has undertaken a reasonably diligent investigation to determine the facts of the case, is acting upon the opinion of a reasonably qualified legal advisor, and is of the honest belief that the risk of an adverse verdict is one which it would assume if there were no limits to its policy, providing the insured is informed of the offer of settlement, furnished with the results of the investigation made, and advised of the opinion upon which the rejection is based. (*Brown* v. *Guarantee Ins. Co.*, 155 Cal.App.2d 679 [319 P.2d 69]; *Hilker* v. *Western Automobile Ins. Co.*, 204 Wis. 1 [231 N.W. 257, 235 N.W. 413]; *Christian* v. *Preferred Acc. Ins. Co.*, 89 F.Supp. 888, 890.)

The primary issue on this appeal concerns the sufficiency of the evidence to support the implied finding of the jury that the defendant insurance company did not exercise good faith in refusing to accept the offer to settle the Manuel case for $4,500.

When the sufficiency of the evidence to sustain a verdict is questioned on appeal, the inquiry of the appellate

court is limited to the ascertainment of the existence of any evidence, whether direct or indirect, which will support the verdict. (*Richter* v. *Walker,* 36 Cal.2d 634, 640 [226 P.2d 593]; *Estate of Bristol,* 23 Cal.2d 221, 223 [143 P.2d 689]; *Roberts* v. *Karr,* 178 Cal.App.2d 535, 546 [3 Cal.Rptr. 98].) ▆ A determination respecting the presence or absence of good faith involves an inquiry into motive, intent and state of mind. Conclusions concerning such matters, in most cases, are founded upon inferences. ▆ On appeal it must be assumed that the jury drew every favorable inference reasonably deducible from the facts which will support its determination. (*Hamilton* v. *Pacific Elec. R. Co.,* 12 Cal.2d 598, 602 [86 P.2d 829]; *State* v. *Day,* 76 Cal. App.2d 536, 549 [173 P.2d 399]; *Garland* v. *Hirsh,* 74 Cal.App.2d 629, 636 [169 P.2d 405].) ▆ The evidence in the case at bar establishes that the defendant insurance company made a reasonably diligent effort to investigate the facts material to the issue of liability in the action of Manuel against Davy. It employed an experienced independent investigator who was on the scene the night of the accident; took photographs of the scene; within 11 days thereafter had interrogated and obtained statements from the cab driver and eight eyewitnesses; and thereafter continued his investigation. The extent of his services is reflected in his bill for $765.69 which was submitted to and paid by the insurance company. ▆ Davy claims that the evidence shows that the investigator knew the names of adverse witnesses which he did not report to the insurance company and thus withheld material evidence from that company; that instead of having the witnesses sign statements composed by him from the facts related by them at the time of interview, the investigator should have taken a verbatim statement from them; and that he did not question any of the eyewitnesses used by Manuel. Such evidence might establish negligence on the part of the investigator but did not establish bad faith on the part of the insurance company. In addition to the foregoing investigation, the attorney employed by the company to defend the action, by appropriate legal proceedings, obtained information in the police files concerning the accident.

▆ After Manuel filed his complaint against Davy, the insurance company employed the law firm of Borton, Petrini, Conron, Brown and Condley, to defend the action. Mr. Borton, whose integrity and legal ability is considered in laudatory terms by all parties, assumed the defense. No

adverse contention is or can be made concerning the qualifications of the legal advisor so selected.

Simultaneously with Mr. Borton's employment, the insurance company wrote Mr. Davy an "excess letter" advising him that Manuel was suing for a sum in excess of $225,000; that his policy limit was $5,000; that he would be liable for any judgment in excess of that limit; that it had appointed counsel to defend the action; but, if he desired to have another attorney collaborate in the defense thereof, he was at liberty to do so at his own expense.

About two weeks before the trial date, Davy learned from the investigator that Manuel was willing to settle for $4,500. He communicated this information to Attorney Borton who, according to Davy, confirmed the fact but stated that the insurance company "will not go that high."

The defendants in the case at bar contend that the evidence is not sufficient to establish that a firm offer of settlement was made; that only a conditional offer was tendered; and that liability cannot be based upon rejection of a conditional offer, citing *Jones* v. *Highway Insurance Underwriters* (Tex.Civ.App.), 253 S.W.2d 1018. Although there is a conflict as to whether the attorney for Manuel, a Mr. Chain, made a firm offer to settle for $4,500, or only made an offer to settle for $4,000 contingent upon acceptance of a lien claimant of one-third of that amount in satisfaction of its claim and also contingent upon acceptance by his client, there is sufficient evidence in the record to support the conclusion that a firm offer to settle for $4,500 actually was made.

On the occasion when Davy advised Borton what he had heard with respect to settlement, he was told by Borton that the insurance company would pay $3,000. Upon Davy's request Borton thereupon called Chain and tried to negotiate a settlement for $3,000, but Chain refused to settle for less than $4,500. Davy then asked Borton if the insurance company would settle providing he put up the difference and Borton replied that it was against company policy for a client to put up any money, and suggested that Davy seek the advice of another attorney about this matter. This suggestion was based on the fact that Borton had been employed by the insurance company and the situation at hand presented a conflict of interests which disqualified him from advising both the insurance company and Davy with respect to that particular matter. This position was commendable and, contrary to plaintiff's contention, is not evidence of bad faith.

The conflict of interests between the insurer and the insured created by an offer of settlement under circumstances such as that presented in this case is evident. (*Brown* v. *Guarantee Ins. Co.*, 155 Cal.App.2d 679, 682 [319 P.2d 69]; *Radcliffe* v. *Franklin Nat. Ins. Co.*, 208 Ore. 1 [298 P.2d 1002, 1011].)

Acting on Borton's advice, Davy obtained the services of another attorney to advise him with respect to his rights under the policy. Thereafter he made no further suggestion that he participate in the payment of the proposed settlement. Instead, he telegraphed the insurance company demanding that it settle the case within policy limits. In reply to this telegram, the insurance company wrote Davy expressing its willingness to settle within policy limits; informing him of its belief that the case was defensible on the ground of contributory negligence; and stating that this position conformed to the advice of Mr. Borton, of the company's local attorney in Los Angeles, and of its claims department. Subsequently, however, the insurance company advised Davy that if he did not withdraw his demand respecting settlement, the policy would be cancelled; Davy refused; and cancellation was effected.

Plaintiff complains that he was not given immediate notice of the settlement offer by the insurance company and contends that this failure is evidence of bad faith. There is no merit to this contention. Regardless of who may have communicated the information to him, Davy was fully informed in sufficient time to protect his interests. No unfair advantage was taken of him in the premises.

The insurance company refused to increase its offer of $3,000 and the case went to trial on the date scheduled, resulting in the verdict against Davy of $24,268.

The record before us does not sustain a finding that the consideration given to the offer of settlement by the defendants was not an intelligent consideration; their investigation was sufficiently adequate and diligent and their legal advisors sufficiently qualified to meet the demands of good faith. Nor does the record establish that the insured was not given the opportunity to protect his own interests. The remaining and determinative factor is whether the defendant insurance company would have accepted the offer of settlement under the circumstances present if there had been no limit to its liability. This inquiry arises out of the obligation of the insurer to give equal consideration to the interests of the insured as it gives to its own interests.

■ "Whether or not the insurer is guilty of bad faith is, of course, a question for the trier of fact in each case." (*Brown* v. *Guarantee Ins. Co.*, 155 Cal.App.2d 679, 689 [319 P.2d 69].) This general rule is subject to the qualification that such determination becomes a question of law when, from uncontroverted evidence, a reasonable man following the law can draw but one conclusion on the issue. (*Hudson* v. *Rainville*, 46 Cal.2d 474, 477 [297 P.2d 434]; *Shiya* v. *Reviea*, 122 Cal.App.2d 155, 160 [264 P.2d 190].)

■ Mr. Borton did not advise the insurance company that liability was not probable. In his letter to that company advising them of a contingent settlement offer of $4,000, he expressed his belief that this was not a "rock-bottom figure," but added "As you are aware, this is a case of rather serious injury involving a police officer allegedly making an emergency response to an injury accident, and that the dispute will lie primarily as to whether or not he was operating with a siren, red light or in fact any lights, at the time of the occurrence of the accident. On this issue, there are diametrically opposed positions to be taken between our accumulation of witnesses, the police officer's story and whatever witnesses the police department has been able to collect to aid their side of the accident. Under these circumstances, of course, the ultimate outcome of the case will hinge primarily upon whom the jury believes." In reply, representatives of the insurance company wrote that they believed it would be advisable to effect a settlement, if possible, but that the case did not have a settlement value of $4,000 and suggested offering $1,500 with a top figure of $2,000; stating their impression that they would have "a better than 50-50 chance of obtaining a defense verdict," although they appreciated the expense involved and the possibility of an adverse verdict of "a sizable amount." There is no doubt that the insurance company was fully aware of the serious nature of the injuries sustained by Manuel. Nevertheless, it refused to authorize a medical examination requested by Borton, knowing that the amount of any adverse verdict would be well over the policy limit. The jury in the case at bar was entitled to infer that if the policy had no liability limits, the insurance company would have been concerned about the amount of the adverse verdict as well as about the fact of such a verdict. This was evidence pertinent to a determination respecting the equal consideration factor involved.

■ From the original figure of $1,500, the insurance

company raised its offer to $3,000, but refused to pay $4,500. The record sustains an inference that at no time did it ask Mr. Borton whether Manuel's offer should be accepted. Acceptance would have meant the expenditure of $1,500 more than the highest amount authorized, i.e., $3,000, but would have been several thousand dollars less than the amount of an adverse verdict. The actual verdict of $24,268 is evidence of the serious nature of the injuries involved and what the company may have anticipated if it had given the issue of damages contemplative consideration. The refusal to pay an additional $1,500 and accept the probability of paying an additional $21,268 without requesting an opinion from the attorney delegated to try the case; the adverse inferences which might be drawn from the opinion of the trial attorney that the outcome of the case depended "primarily upon whom the jury believes," which is a hazardous circumstance, and the evaluation by the claims department of a "better than 50-50 chance" to win, which merely places the probability of an adverse verdict at less than 50 per cent; together with the attitude of the company to protect the insured on the issue of liability but not on the issue of damages; as well as the incident involving cancellation of plaintiff's policy, furnish a basis within reason for concluding that the company did not act in good faith in rejecting the settlement offer of $4,500. This conclusion, of course, is based upon inferences which are drawn in support of the verdict in accord with the obligation imposed upon us under the general rule heretofore stated.

The defendants also contend that the court erred in giving certain instructions and in sustaining objections to proffered testimony. The plaintiff offered an instruction in the language of the opinion in *Brown* v. *Guarantee Ins. Co.*, 155 Cal.App.2d 679, 689 [319 P.2d 69], advising the jury that in deciding whether an insurer's refusal to settle constitutes a breach of duty to exercise good faith certain factors should be considered, listing seven separate factors as set forth in the cited opinion. This instruction was given and the defendants claim error thereby. The defendants offered the same instruction with additions and one deletion, from which the court struck out the first two factors, including the additions made to the language of the opinion in question, and gave the instruction as modified. ▇▇▇ The defendants may not complain of that part of the instruction given at the request of the plaintiff which was included in that part of

the instruction given at their request. (*Jentick* v. *Pacific Gas & Elec. Co.*, 18 Cal.2d 117, 121 [114 P.2d 343]; *Carlson* v. *Glanville*, 170 Cal.App.2d 246, 249 [338 P.2d 580].)

In the plaintiff's requested instruction factors (1) and (2) which the jury was advised to consider, were set forth as follows:

(1) The strength of the injured claimant's case on the issues of liability and damages.

(2) Attempts by the insurer to induce the insured to contribute to a settlement.

The objection to the instruction as written is that the jury was not advised how to consider these factors. Although the language in question was general in nature, it was not erroneous. The application of this language to the facts in this case as set forth in that part of the defendants' instruction not given was appropriate, and the instruction should have been given without modification. However, the manner of application of the factors in question to the facts of this case was obvious and the refusal to give the instruction as proposed did not constitute prejudicial error. The concluding paragraph in the instruction objected to, which was not included in the similar instruction proposed by defendants, also was in the language of the court's opinion in *Brown* v. *Guarantee Ins. Co.*, 155 Cal.App.2d 679, 689 [319 P.2d 69], and referred the jury to "any other factor tending to establish or negate bad faith on the part of the insurer." This was an innocuous instruction permissible for the purpose of indicating that the specifically described factors were not to be given exclusive consideration by the jury. There was no error.

The second instruction to which defendants object was given on the court's own motion. However, in part it consists of an instruction proposed by them. The addition, which is claimed to be erroneous, uses the language of the court's opinion in *Brown* v. *Guarantee Ins. Co.*, 155 Cal.App.2d 679, 689 [319 P.2d 69]. That part of the instruction proposed by the defendants instructed the jury that mere negligence or carelessness of an insurance company in failing to settle a case is not sufficient to allow recovery by the insured. To this the court added: "Bad faith may involve negligence, or negligence may be indicative of bad faith, but negligence alone is insufficient to render the insurer liable." This is a correct statement of the law as contained in the cited case, although for jury instruction purposes, it would have been more informative to have stated that conduct amounting to bad faith

may include conduct amounting to negligence, or that conduct amounting to negligence, when considered with other factors, may indicate bad faith. By other parts of the instruction in question, together with an additional instruction on the same subject which was proposed by the defendants and given by the court, the jury was cogently charged that the defendants' liability could not be based on negligence. The allegedly erroneous instruction did not detract from this straightforward admonition.

The remaining objectionable instruction was given by the court during the course of the arguments. Mr. Friedman, the attorney for defendants, started to comment on the fact that Mr. Chain, Mr. Manuel's attorney in the claim action, and also one of the plaintiff's attorneys in the present action, had not testified, although he had been present in court during the whole trial and heard witnesses for the insurance company testify that there never was any definite offer of settlement in the claim action; the court interrupted; instructed the jury that "Mr. Chain couldn't take the stand because he is a lawyer"; and apparently directing his remarks to Mr. Friedman, stated: "It is against the rules and you objected to him testifying." Thereupon a colloquy ensued between the court and Mr. Friedman, which, without detailing the substance thereof, establishes no error in the court's instruction. The defendants contend that they were entitled to comment on the fact that, although as a matter of ethics an attorney in a case should not be a witness therein, Mr. Chain nevertheless had the choice of testifying rather than acting as an attorney and he chose the latter course; that the disqualification to testify is one imposed by legal ethics only; and that the court gave the jury the impression that the law prohibited Mr. Chain from testifying. However, at one point in the colloquy heretofore referred to the following occurred:

"MR. FRIEDMAN: May I comment to the jury that Mr. Chain ——

"THE COURT: Whether he should have been a witness or a lawyer, you let the jury decide.

"MR. FRIEDMAN: Mr. Chain, I understand, is going to argue the case after I finish and he will have a chance to comment on anything I say, and I only want to say that Mr. Chain, who was the attorney for Officer Manuel in the other action and he is also the attorney for the plaintiff, Mr. Davy, in this action, when Mr. Gill was the attorney for Mr. Davy. I am sure that Mr. Chain knew his testimony in this particular action would

be very important. He made his decision and I will let you decide what the situation is."

The point urged by Mr. Friedman was more dramatically and thoroughly covered by the course of events than would have been the case if the court had not intervened. Moreover, it appears that the remarks by the court were invited by the defendants' previous objection to any testimony by Mr. Chain. This objection occurred in chambers and the record of those proceedings is not before this court. The propriety of the instruction to which objection is made cannot be determined upon a partial transcript of the proceeding. The alleged claim of error is not sustained.

Finally, the defendants contend that the judgment should be reversed because a representative of the insurance company was not permitted to explain two notes attached to its file; one read: "Demand $4500.00"; and the other, "Demand still $4500.00." However, the witness did testify that when he made these memoranda neither Mr. Borton nor anyone else had notified him that Mr. Chain had made a definite offer to settle for $4,500. No offer of proof was made and there is no showing in the record as to what further explanation the witness could have given. No error appearing, the contention is without merit.

The judgment is affirmed.

Griffin, P. J., and Shepard, J., concurred.

A petition for a rehearing was denied June 17, 1960, and appellants' petition for a hearing by the Supreme Court was denied July 20, 1960.